UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOSE MORENO, ET AL.,                              No. C 05-1250 MJJ (JL)

        Plaintiffs,

    v.                                            REPORT AND RECOMMENDATION
                                     RE DEFAULT JUDGMENT
CASRIK, INC, ET AL.,                              (docket # 10 )

        Defendants.
_____/

**I. Introduction**

      Plaintiffs Jose Moreno, as Chairman, and Larry Totten, as Co-Chairman, of the

Boards of Trustees for the Laborers Trust Funds listed in the caption (collectively,

"plaintiffs"), brought a  Motion for Default Judgment. The Trust Funds are multi-employer,

employee benefit plans within the meaning of §§ 3(3) and 3(37) of the Employee

Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1002(3) and 1002(37). Plaintiffs

filed their Complaint against defendant CASRIK, INC., pursuant to §§ 502(a)(3), 515 and

502(g)(2) of ERISA, 29 U.S.C. §§ 1132(a)(3),1145 and 1132(g)(2), seeking a money

judgment for the amount of unpaid contributions, interest thereon, and liquidated damages

owed to the Trust Funds and related costs and attorneys fees incurred in bringing this

action.

United States District Court

For the Northern District of California

1    Plaintiffs also sued defendant JOEL CARONE pursuant to §§ 502(a)(2), 409,

2 515 and 502(8)(2) of ERISA, 29 U.S .C. §§ 1132(a)(2),1109,1145 and 1132(8)(2), seeking

3 to hold him jointly and severally liable for the same money judgment.

4    The Complaint was filed on March 28, 2005 . Defendants CASRIK, INC., and JOEL

5 CARONE were both served with the summons and Complaint on April 22, 2005. Neither

6 defendant filed any response to the Complaint, and their defaults were entered on June 22,

7 2005.

8    Based on the information stated in the declarations of Makita Wright and of Bruce K.

9 Leigh in support of the motion for default judgment, it is reasonably believed that defendant

10 Joel Carone is neither an infant nor incompetent person nor in military or uniformed service

11 or otherwise exempt under the Soldiers' and Sailors' Civil Relief Act of 1940 (as amended

12 from time to time) or under the Servicemembers Civil Relief Act of 2003.

13    Plaintiffs requested that the Court issue a judgment in their favor for the following

14 sums: $17,509.66 for delinquent employer contributions remaining due as of September

15 28, 2005, from contributions earned from November 2004 through March 2005; $4,524.20

16 for prejudgment interest accrued as of October 25, 2005, on unpaid balances of

17 contributions due plaintiff trust funds for the contribution months November 2003 through

18 March 2005; $1,500.00 for liquidated damages for delinquencies from November 2003

19 through January 2005; $434.24 for costs incurred to date, and $6,210.00 for attorneys fees

20 incurred to date in bringing this action. Thus plaintiffs seek judgment in total

21 (including employer contributions, interest, liquidated damages, costs and attorneys fees)

22 for $30,178.10.

23    In addition, plaintiffs seek a mandatory injunction requiring defendants to submit to

24 an audit of their business records for the period of November 2003 to the present to

25 determine the full amount of employer contributions due and owing to the plaintiff trust

26 funds.  Finally, plaintiffs seek a declaratory judgment that, pursuant to the terms of the

27 applicable trust agreements, plaintiffs are entitled to postjudgment interest, costs and

28

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1  reasonable attorneys fees incurred in enforcing both the money judgment and the

2  mandatory injunction until the judgment is satisfied.

3        **A. Plaintiffs Are Entitled to a Default Judgment**

4        After the entry of a default by the court clerk, the court may enter a judgment of

5  default pursuant to FRCP 55(b)(2). *See Roofers Local 81 v. Wedge Roofing, Inc.,* 811

6  F.Supp. 1398, 1401 (N .D .Cal.1992). FRCP § 55(d) states, in pertinent part :

7        "Judgment by default may be entered as follows: . . . (2) In all other cases the party

8        entitled to a judgment by default shall apply to the court therefore; . . . If the party

9        against whom judgment by default is sought has appeared in the action, the party    .

10       . . shall be served with written notice of the application for judgment at least 3 days

11       prior to the hearing on such application. If, in order to enable the court to enter

12       judgment or carry it into effect, it is necessary to take an account or to determine the

13       amount of damages . . . the court may conduct such hearings or order such

14       references as it deems necessary and proper. '

15       The decision to grant or to deny a request for default judgment lies within the sound

16  discretion of the district court. *Aldabe v. Aldabe,* 616 F .2d 1089, 1092 (9th Cir. 1980).

17  When exercising this discretion, a district court is guided by the following factors: (1) the

18  merits of the plaintiff's claim; (2) the sufficiency of the complaint; (3) the amount of money

19  at stake in the action; (4) the possibility of prejudice to the plaintiff; (5) the possibility of a

20  dispute concerning material facts; (6) whether the default was due to excusable neglect;

21  and (7) the strong policy of the Federal Rules of Civil Procedure favoring a decision on the

22  merits. *Eitel v. McCool,* 782 F .2d 1470, 1471-72 (9th Cir. 1986). *See generally Shop*

23  *Ironworkers Local 79 v. United Safe, Inc.* WL129538 (N.D. Cal. 1999) No . C-98-3737

24  VRW.

25       There is no reason to believe there is any dispute of the facts contained in the

26  Complaint. There is no evidence that defendants' failure to respond to the complaint or

27  participate in this proceeding is due to excusable neglect.

28

**United States District Court**
For the Northern District of California

1   While policy normally favors a resolution on the merits of a dispute, that policy is

2   outweighed here by the need of plaintiffs (acting on behalf of the employee benefit plans

3   and their participants and beneficiaries) for a prompt resolution of this matter. Plaintiffs

4   have already been prejudiced by defendants' failure to pay employer contributions that

5   would provide pension, health and welfare, apprenticeship and training, and vacation and

6   holiday benefits to their employees and to participants and beneficiaries of the plans. The

7   strong policy favoring efficient resolution of collections actions under ERISA must be given

8   great deference. *Central States, Southeast & Southwest Areas Pension Fund v. Gerber*

9   *Truck Serv.,* 870 F. 2d 1148, 1152 (7th Cir. 1989).

10   **B. Casrik, Inc., is liable to plaintiffs under §§ 515 and 502(g)(2) of ERISA and**

11   **under applicable collective bargaining agreements and trust agreements**

12   **for unpaid employer contributions, interest, liquidated damages, and for**

13   **plaintiffs' costs, and attorneys fees incurred in this action.**

14   Section 515 of ERISA, 29 U.S.C. § 1145, provides : "every employer who is

15   obligated to make contributions to a multiemployer plan under the terms of the plan or

16   under the terms of a collectively bargained agreement shall, to the extent not inconsistent

17   with law, make such contributions in accordance with the terms and conditions of such plan

18   or such agreement . "

19   As plaintiffs' Complaint alleges, the Trust Funds are multi-employer plans as defined

20   by § 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A). As shown by Exhibit A to Makita Wright's

21   declaration (see, also, ¶3-5 of her declaration), for all times relevant to this action

22   defendant Casrik, Inc., by its President Joel Carone, has been signatory to a Memorandum

23   Agreement binding it to the Laborers Master Agreement for 2002-2006 and the Trust

24   Agreements for the Laborers Trust Funds, and so has been obligated to pay employer

25   contributions to plaintiffs' trust funds.

26   Section 502(g)(2) of ERISA, 29 U .S .C . § 1132(g)(2), provides:"In any action under

27   this title by a fiduciary for or on behalf of a plan to enforce § 515 in which a judgment in

28   favor of the plan is awarded, the court shall award the plan -

**United States District Court**
For the Northern District of California

1    (A) the unpaid contributions,

2    (B) interest on the unpaid contributions,

3    (C) an amount equal to the greater of - (I) interest on the unpaid contributions, or (ii)

4    liquidated damages provided for under the plan in an amount not in excess of 20

5    percent [the unpaid contributions], [and]

6    (D) reasonable attorney's fees and costs of the action, to be paid by the defendant."

7    As shown in Exhibit C to Ms . Wright's declaration, consistent with § 502(g)(2) of

8    ERISA, Section 28A (last paragraph) of the Laborers Master Labor Agreement imposes on

9    delinquent employers liability for interest on unpaid employer contributions and for

10    liquidated damages. If payment in full is not received by the 25th day after the month

11    contributions were earned, the payment is delinquent (Leigh Decl. At Ex. C, §8) and a "flat

12    fee" liquidated damage of $150.00 is assessed. See Declaration of Makita Wright,

13    paragraphs 9-10. If payment in full is not received by the 25th day of the second month

14    after the month contributions were earned, interest is assessed at 1.5% per month against

15    the unpaid balance from the 25th day of the month following the month when contributions

16    were earned; such interest will then be assessed against the unpaid monthly balance until

17    the balance is fully paid. See Declaration of Wright, paragraph 10.

18    To be entitled to liquidated damages under this provision, the employer must be

19    delinquent at the time the action was filed, judgment must be entered against the employer,

20    and the plan must provide for such an award. *Northwest Administrators, Inc. v . Albertson's,*

21    *Inc.*, 104 F .3d 253, 257 (9th Cir. 1996). All three requirements are satisfied here.

22    As shown in the Declaration of Bruce K. Leigh (paragraph 18) and its Exhibit C,

23    consistent with § 502(g)(2) of ERISA, the Trust Agreements for the Laborers Trust Funds

24    provide that a delinquent employer also will be liable for costs and attorneys' fees incurred

25    by the Funds in enforcing the employer's obligations.

26    For example, Article IV, Section 3, of the Trust Agreement for the Laborers Health

27    And Welfare Trust Fund provides:

28

"If any Individual Employer defaults in making of Contributions or payments and if the Board consults legal counsel, there shall be added to the obligation of the Individual Employer who is in default, reasonable attorney's fees, costs and all other reasonable expenses incurred in connection with the suit or claim, including any and all appellate proceedings."

To be entitled to attorneys' fees under this provision, the employer must be delinquent at the time the action was filed, judgment must be entered against the employer, and the plan must provide for such an award. *Northwest Administrators, Inc. v. Albertson's, Inc., supra*. All three requirements are satisfied here.

**C. Joel Carone may be liable under § 409(a) and 515 of ERISA for the same losses due to his responsibility as an "Employer" and "Fiduciary."**

Section 515 of ERISA, 29 U.S.C. § 1145, imposes on the employer the obligations to contribute to the trust funds. The term "Employer" is defined at § 3 (5) of ERISA, 29 U.S.C. § 1002(5), as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan . . . . . Joel Carone, as chief executive officer, president, and managing responsible officer of Casrik, Inc. (see Declaration of Leigh, paragraph 6, and Exhibits A and B thereto), is such an employer acting directly as employer or indirectly in the interest of Casrik, Inc ., as employer with respect to the plaintiff trust funds. Indeed, Joel Carone is listed as the sole executive officer of Casrik, Inc. He thus becomes liable to the trust funds for the obligations of Casrik, Inc.

Under § 409(a) of ERISA, a fiduciary with respect to a plan may be held liable for breach of fiduciary duty to make good the losses incurred by the plan for his breach of duty. Section 502(a)(2) of ERISA authorizes a fiduciary of an ERISA plan to bring an action to enforce that liability and to recover on behalf of the plan. Plaintiffs are the named fiduciaries with respect to these trust funds, and defendant Joel Carone is responsible as a fiduciary with respect to the payments owed.

**United States District Court**
For the Northern District of California

1   The definition of a fiduciary under ERISA is liberally construed according to the

2   person's conduct, not his title. *Arizona State Carpenters Pension Trust Fund v. Citibank*,

3   125 F.3d 715, 720 (9th Cir.1997). Under § 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A) "a

4   person is a fiduciary with respect to a plan to the extent (I) he . . . exercises any authority or

5   control respecting management or disposition of its assets . . . ."

6   According to applicable federal regulations at 29 C.F.R. § 2510.3-102 (1989) the

7   assets of an ERISA plan include employer contributions from the time that they are

8   withheld from an employee's wages and become due for payment to the plan: "[t]he assets

9   of the plan include amounts . . . that a participant has withheld from his wages by an

10  employer, for contribution to the plan as of the earliest date on which such contributions

11  can reasonably be segregated from the employer's general assets."  The regulation goes

12  on to define the latest date when such segregation shall be deemed to occur. For plans

13  such as those represented here by plaintiffs, where contributions are permitted only from

14  employers, the latest date is the "date on which such amounts [otherwise] would have been

15  payable to the participant in cash [wages]."  See also: *United States v. Grizzle*, 933 F.2d

16  943, 946-47 (11th Cir.1991)(holding that employer contributions become plan assets,

17  though unpaid, as soon as they become due under the collective bargaining agreement).

18  *See also Board of Trustees of the Airconditioning & Refrigeration Industry Health and*

19  *Welfare Trust Fund v. J.R.D . Mechanical Services, Inc.*, 99 F .Supp .2d 1115 C.D.Cal.

20  1999).

21  Here, under the terms of the respective trust agreements, the assets of the

22  respective plans are defined consistent with the federal regulation described above.  Article

23  II, Section 1, of the trust agreement for the Health and Welfare Fund (see Exhibit C to the

24  Declaration of Bruce K. Leigh), states: the "Fund . . . shall consist of all Contributions

25  required by the Collective Bargaining Agreement to be made . . . ," i.e., including

26  contributions due but unpaid and not merely those that have been paid.  Under the terms of

27  the Master Labor Agreement and the applicable trust agreements, such contributions

28  become due the 25th day after the month in which they were earned. (*Id.* at §8)

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1   Defendant JOEL CARONE has been the responsible managing officer, chief

2   executive officer, and president of the defendant corporation throughout the period relevant

3   to this lawsuit. (See paragraph 6 of the Declaration of Bruce K. Leigh and its Exhibits A and

4   B.) Defendant Joel Carone thus had discretionary control over the release of employee

5   benefit contributions withheld from employee wages for payment to the trust funds and so

6   has been a fiduciary with respect to these plan assets. To the extent that those

7   contributions have become due and payable and remain unpaid, he has failed his fiduciary

8   duty to pay such contributions to the trust funds.  He thus becomes liable under § 409(a)

9   for the amount of the delinquent contributions and for losses incurred by the plan,

10  including lost interest, liquidated damages (for the expenses of auditing and monitoring

11  delinquent payments), and the costs and attorneys fees incurred in enforcing the

12  employer's obligations.

13          **D. Plaintiffs are entitled to enforce defendants' liabilities.**

14          Section 502(a)(3) of ERISA authorizes a fiduciary of an ERISA plan to enforce §515

15  of ERISA to collect unpaid employer contributions owed under a collective bargaining

16  agreement. The Board of Trustees for the Laborers trust funds is the named fiduciary under

17  the respective trust agreements.  As shown by Exhibit C (see Article IV, section 3) to the

18  declaration of Bruce K. Leigh, the Board of Trustees is authorized by the respective Trust

19  Agreements to bring action to enforce the delinquent employer's obligation for

20  contributions, interest, liquidated damages, costs and attorneys fees.  Plaintiffs, as

21  representatives of the Board of Trustees, are authorized to bring this action on behalf of the

22  Board of Trustees for the Laborers Trust Funds.

23          **E. The amount of defendants' liabilities is well established .**

24          As explained in the Declaration of Makita Wright (¶12-13, Ex. G-J), as of September

25  28, 2005, defendants owed plaintiff trust funds the sum of $17,509.66 for unpaid employer

26  contributions earned during the period of November 2004 through March 2005.

27

28

**United States District Court**
For the Northern District of California

1    As explained in the declaration of Makita Wright (at ¶11, 14-16, Ex. F,L), defendants

2    owe plaintiffs $1,500.00 for liquidated damages for delinquent payments of the monthly

3    obligations earned from November 2003 through March 2005.

4    As further explained in the Declaration of Makita Wright (at ¶14-16, Ex. F,L),

5    defendants owe the trust funds $4,003.16 for interest accrued on the unpaid balances from

6    the date each monthly contribution became delinquent until that monthly amount was paid

7    or, if still delinquent, to August 25, 2005.

8    As explained in the Declaration of Mr. Leigh (paragraph 21, and its Exhibit D), further

9    interest has accrued on the remaining unpaid balance ($17,509.66) to October 25, 2005, in

10   the amount of $521.04, bringing the total interest accrued as of October.25, 2005, to the

11   sum of $4,524.20.

12   As shown in the Declaration of Bruce K. Leigh (at paragraph 22) and its Exhibit E,

13   defendants owe plaintiffs $434.24 for costs reasonably incurred in bringing this action.

14   As shown in the Declaration of Bruce K. Leigh (at paragraph 23) and its Exhibit F,

15   defendants owe plaintiffs $6,210.00 for attorney's fees reasonably incurred to date in

16   bringing this action. Thus, plaintiffs seek a total money judgment against defendants in the

17   amount of $30,178.10.

18   **F. Plaintiffs are entitled to a mandatory injunction ordering Casrik, Inc., to**

19   **submit to an audit by the trust funds' auditor of its business records to**

20   **determine its full liability for unpaid contributions and related costs.**

21   Defendants are contractually obligated to permit an audit of their financial records.

22   Each of the trust agreements governing the Laborers trust funds provide that the Board of

23   Trustees shall have the power to audit the business records of any employer signatory to

24   the Master Agreement to determine whether covered work is being properly reported and

25   employer contributions are being paid in full.  Article IV, Section 9, of the trust agreement

26   for the Laborers Health & Welfare Trust Fund For Northern California (see Exhibit C to the

27   Declaration of Bruce K. Leigh) provides:

28

United States District Court

For the Northern District of California

1
2
3
4

"Upon request from the Board, any Individual Employer will permit a Trust Fund auditor to enter upon the premises of such Individual Employer during business hours, at a reasonable time or times not less than two working days after such request, and to examine and copy such books, records, papers or reports of such Individual Employer as may be necessary to determine whether the Individual Employer is making full and prompt payment of all sums required to be paid by him or it to the Fund."

5
6
7
8
9
10
11
12
13
14
15
16
17

ERISA also provides Trust Funds the right and authority to audit the records of signatory employers so long as the audit is done in furtherance of a proper purpose.  Plan trustees have broad powers of discovery in aid of their duty to protect and preserve the trust for the benefit of the beneficiaries. *Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc.* (1985) 472 U.S. 559, 571 n.12. As Ms. Wright explains in her declaration (at paragraph 16), defendants have not responded to the Trust Funds' demand to audit their business records, and the Trust Funds thus do not have any indication of the full amount of their obligations for delinquent employer contributions. The only reliable means for determining the full amount of defendants' obligations for employer contributions is by auditing their business records. There is no adequate legal remedy available to plaintiffs. Plaintiffs need, and are entitled to, an injunction requiring defendants to permit plaintiffs to audit their financial records, as requested in the Second Claim for Relief (Mandatory Injunction).

18
19
20

**G. Plaintiffs are entitled to post-judgment interest, costs and attorneys fees reasonably incurred in enforcing this judgment.**

21
22
23
24
25
26
27

Federal law indisputably provides that a judgment creditor is entitled to interest on a federal court money judgment.  Title 28 U.S.C. § 1961 states how the rate of interest is normally calculated in the absence of a prior agreement.  However, it is well established that "the parties are free to contract for whatever postjudgment interest rate they choose" and, if included in the terms of the judgment, that rate shall be enforceable. *Horizon Holding, L.L.C. v. Genmar Holdings, Inc.*, 244 F.Supp.2d 1250,1272-75 (D.Kan. 2003); *Investment Service Co. v. Allied Equities Corporation*, 519 F.2d 508, 511 (9th Cir. 1975).

28

1    Here, the Master Agreement for 2002-2006 (Wright Decl. At Ex. C, §28A) provided

2 that the Trust Funds shall be entitled to interest on unpaid employer contributions at the

3 rate of 1.5% per month (18% per year). This rate of interest applies before judgment is

4 entered and until the obligation is fully paid.

5    Postjudgment costs incurred in enforcing a judgment also are ordinarily recoverable

6 under federal law.   Pre-and post-judgment attorneys' fees are authorized by contract in the

7 trust agreements (see Art. IV, Sec. 3 to the Trust Agreement for Laborers Health & Welfare

8 Trust Fund For Northern California, Exhibit C to the Declaration of Bruce K. Leigh) and by

9 ERISA, § 502(8)(2), 29 U.S .C . § 1132(8)(2).

10    Based on the facts set forth in the declarations and for the reasons set forth above,

11 plaintiffs request of this Court a judgment by default holding defendants Casrik, Inc., and

12 Joel Carone jointly and severally liable for a money judgment in the amount of $30,178.10,

13 consisting of delinquent employer contributions, prejudgment interest, liquidated damages,

14 costs, and attorneys' fees, as shown above, plus further interest (on $17,509.66) at $8.63

15 per day from October 25, 2005, to the date of the judgment.

16    Further, plaintiffs request an order compelling defendants Casrik, Inc., and Joel

17 Carone to submit to an audit of their business records for the period from November 2003

18 to the present to determine the full amount of employer contributions due to the trust funds.

19 Such business records should consist of the following:

20    Individual earnings records; Federal Tax Forms W-3/W-2 and 106911099; Reporting

21    forms for all Trust Funds, State DE-3/DE-6 Tax Reports; Workers' compensation

22    insurance; Employee time cards; Payroll Registers/Journals; Quarterly payroll tax

23    returns (Form 941); Check register and supporting cash vouchers; Forms 1120,

24    1040 or partnership tax returns; General ledger; Source Records, including time

25    cards and time card summaries for all employees; Certified payroll reports;

26    Personnel records indicating job classifications and hire/termination dates; Cash

27    disbursement journal; Vendor invoices; Copies of subcontract agreements; Cash

28    receipts journal; Job cost records; Records of related entities; and any other books

United States District Court
For the Northern District of California

1   and records that may be necessary to complete the auditor's determination or

2   provide additional explanation of defendants' financial records.

3       Plaintiffs also request an order reserving the jurisdiction of the court to hear a motion

4   for a further money judgment against defendant or defendants for additional unpaid

5   employer contributions and related interest and damages that may be discovered by the

6   audit referred to above or by other discovery in this action.

7       Finally, plaintiffs request a judgment declaring that plaintiffs, as judgment creditors,

8   shall be entitled to postjudgment interest on the judgment until it is satisfied and costs and

9   attorney's fees that may be reasonably incurred in enforcing collection of the judgment.

10

11                          **Recommendation**

12      This Court recommends that the district court order as follows:

13      On their First Cause of Action, the Court should order that plaintiffs have and

14  recover from the defendants Casrik, Inc., and Joel Carone, who shall be jointly and

15  severally liable therefor, the sum of $23,533.86, consisting of $17,509.66 for unpaid

16  contributions, $4,524.20 for interest as of October 25, 2005, on the unpaid balances of the

17  monthly employer obligations, plus further interest on the unpaid contributions at $8.63 per

18  day from that date until the date of judgment, and $1,500.00 for "flat fee" liquidated

19  damages.

20      On their Second Cause of Action, the Court should grant plaintiffs' demand for an

21  injunction requiring defendant to submit to an audit of their financial records. Defendants

22  shall immediately submit to an audit and shall grant plaintiffs access to those financial

23  records necessary to conduct the audit. The Court should retain jurisdiction over plaintiffs'

24  Second Cause of Action to oversee compliance with this judgment.  The financial records

25  shall include, for the time period October 2003 through the present, at a minimum:

26  Individual earnings records; Federal Tax Forms W-3/W-2 and 1069/1099; Reporting forms

27  for all Trust Funds, State DE-3/DE-6 Tax Reports; Workers' compensation

28  insurance; Employee time cards; Payroll Registers/Journals; Quarterly payroll tax returns

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1  (Form 941); Check register and supporting cash vouchers; Forms 1120, 1040 or

2  partnership tax returns; General ledger; Source Records, including time cards and time

3  card summaries for all employees; Certified payroll reports; Personnel records indicating

4  job classifications and hire/termination dates; Cash disbursement journal; Vendor

5  invoices; Copies of subcontract agreements; Cash receipts journal; Job cost records;

6  Records of related entities; and any other books and records that may be necessary to

7  complete the auditor's determination or provide additional explanation of defendants'

8  financial records.

9         In connection with this judgment on plaintiffs' second cause of action, the Court

10  should retain jurisdiction to enforce its order herein and to hear a motion for a further

11  money judgment for unpaid employer contributions and related expenses owed by

12  defendant or defendants as may be discovered by such audit or further discovery.

13         The Court should also order that Plaintiffs also recover costs in the amount of

14  $434.24 reasonably incurred in bringing this action, and attorneys fees in the sum of

15  $6,210.00, reasonably incurred by plaintiffs' counsel in prosecution of this action to the date

16  of this judgment.

17         Finally, the Court should order that plaintiffs recover such interest as shall accrue on

18  the money judgment at the contractual rate of 18% per annum, and plaintiffs shall recover

19  such post-judgment costs including attorneys fees as may be reasonably incurred and as

20  may be shown in enforcing this judgment.

21         The Court should enter judgment for plaintiffs, exclusive of any post-judgment

22  interest, costs, or attorneys fees, in the amount of $30,178.10 plus further interest (on

23  $17,509.66) at $8.63 per day from October 25, 2005, to the date of judgment.

24         Respectfully submitted,

25  DATED: May 25, 2006

26

27  _____
    JAMES LARSON

28  Chief Magistrate Judge

G:\JLALL\CHAMBERS\CASES\CIV-REF\05-1250\R&R re #10.wpd